UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA L. MCCALL, SR. ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 3:22-cv-02569-GCS |
| ) | |
| CHRISTINE BROWN, ) | |
| DAVID MITCHELL, and ) | |
| ERIC WANGLER ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

## INTRODUCTION AND BACKGROUND

Plaintiff Joshua McCall, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Plaintiff alleges from May 9, 2022, to October 5, 2022, he was denied medical care for his torn Achilles in violation of the Eighth Amendment. On June 23, 2023, the Court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on Eighth Amendment deliberate indifference claims against Defendant Christine Brown, the healthcare unit administrator, for turning a blind eye to Plaintiff's severe pain, against Warden David Mitchell for also turning a blind eye to Plaintiff's severe pain, and against Lt. Eric Wangler for refusing to honor medical

permits. (Doc. 10, p. 8-9). The Court also allowed Plaintiff to proceed on a state law claim of intentional infliction of emotional distress against these three Defendants.

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Brown and Defendant Mitchell. (Doc. 26).¹ Defendants Brown and Mitchell argue that Plaintiff failed to exhaust his administrative remedies prior to filing the present lawsuit because he did not file any grievances which address his claims against Defendants pursuant to the procedures set forth in the Illinois Administrative Code. Along with the motion for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment. (Doc. 27). Plaintiff opposes the motion. (Doc. 31). As the motion is ripe, the Court turns to address the merits of the motion.

## FACTS²

On May 15, 2022, Plaintiff filed emergency grievance # 1379-05-22 concerning the

---

¹ Defendant Wangler withdrew the affirmative defense of failure to exhaust administrative remedies. *See* (Doc. 28, 29).

² The record reflects that Plaintiff filed many grievances pertaining to the issues in this lawsuit. (Doc. 26-1, 26-2). In rendering this decision, the Court only addresses the grievances that were fully grieved, addressed by the ARB, and fully exhausted *prior* to Plaintiff filing this lawsuit on November 4, 2022. *See, e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (noting that an inmate must exhaust his administrative remedies prior to filing suit, "a 'sue first, exhaust later' approach is not acceptable."). Grievances filed and exhausted *after* he filed his Complaint cannot serve to exhaust administrative remedies. *See Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Chambers*, 956 F.3d at 984.

allegations in this lawsuit citing staff conduct, medical treatment, and other noting "Who's ever else in charge of my safety." (Doc. 26-1. p. 92). Plaintiff does not name either Defendant Brown or Defendant Mitchell. Plaintiff requested the following relief: "I need to be in one or two house, I need to be in a cell by myself until I have my surgery. I should be in Health Care, I really need my pain medication . . . ." *Id*. at p. 92. On May 17, 2022, the Chief Administrative Officer ("CAO") expedited the emergency. *Id.* On June 16, 2022, the grievance officer denied the grievance responding in part: "[p]er HCUA: He did not receive a single cell permit when he saw the MD on 5/13/22. He was ordered low bunk/low gallery permit. He has pain medications and crutches. On May 19, 2022, he was scheduled to see the MD again but went to yard. If his foot is hurting him as bad as he is stating and he does not want to hurt it further then he should not be going to the yard . . . ." *Id.* at p. 91. On June 17, 2022, the CAO concurred with the grievance officer's decision to deny Plaintiff's grievance. *Id.* at p. 90. On August 10, 2022, Jon Loftus of the Administrative Review Board ("ARB") denied the grievance finding: "[p]er HCUA, grievant was given Medical Permit on 5/13/2022 and had MRI on 8/1/22. Grievant is pending approval to see Orthopedic or Podiatry. Outside vendors are outside the jurisdiction of the IDOC. Only licensed medical professionals can diagnose and treat medical conditions. Grievant has access to HCU for all medical needs." *Id.* at p. 87. Rob Jeffreys, Director, concurred with this finding. *Id.*

Additionally, on May 19, 2022, Plaintiff filed emergency grievance # 1407-05-22

complaining that Defendant Wangler made him wear a shoe on his torn Achilles despite Plaintiff having a medical permit to wear his shower shoe. Plaintiff does not name either Defendant in this grievance. He requested the following relief: "[a]ll I want is to protect my ankle and foot. I have a torn Achilles!!! The Doctor gave me the permit for the shower shoe. Move me to the one or two house in a cell by myself." (Doc. 26-1, p. 68). On May 19, 2022, the CAO deemed this grievance an emergency. *Id.* The grievance officer responded in pertinent part: "[p]er the HCUA the medical file does indicate that the individual does have permit to wear shower shoes related to an injury. The permit is 5/13/22 to 8/13/22." *Id.* at p. 67. The CAO concurred with the grievance officer's recommendation that the grievance be denied. *Id.* On August 10, 2022, Mr. Luftus with the ARB denied this grievance concluding that the facility appropriately addressed this issue and that the medical issues were previously addressed in grievances # 1379-05-22 and # 1522-06-22; Director Jeffreys concurred. *Id.* at p. 66.

On June 12, 2022, Plaintiff filed emergency grievance # 1614-06-22 regarding the allegations in this case for staff conduct and medical treatment. He named "Grievance Officer C Hale, Lt. Wangler, Doctor and Nurse." (Doc. 26-1. p. 72). Similarly, Plaintiff requested the following relief: "[a]ll I want is to be treated fairly and as a human being. I need a boot for my foot, crutches, a MRI, for your officers to abide by the rules and surgery on my left foot because I am in constant pain . . . Thank you." *Id.* This grievance does not name either Defendant. On June 14, 2022, the CAO deemed this grievance an

emergency. *Id.* The grievance officer replied in part: "[p]er HCU: I responded to this issue previously. . . . He is scheduled for the MRI in July . . . ." *Id.* at p. 71. On June 29, 2022, the CAO concurred with the grievance officer's recommendation that the grievance be denied. *Id.* at p. 70. On August 10, 2022, Mr. Luftus with the ARB denied this grievance concluding that the facility appropriately addressed this issue and that the medical issues were previously addressed in grievances # 1379-05-22 and # 1522-06-22; Director Jeffreys concurred. *Id.* at p. 66.

On June 26, 2022, Plaintiff submitted emergency grievance # 1756-06-22 regarding his torn Achilles, staff conduct, and medical treatment. He named "Lt. Wangler, Doctor, Nurse P, Grievance Officer, Administration Office." (Doc. 26-1, p. 76). The grievance states in part: "[a]dministration office just signs off on anything and everything without actually getting to the truth. Another thing the MD and nurse lied about giving me crutches. . . . I can see Pinckneyville doesn't care about my safety, security or health." *Id.* at p. 77. Plaintiff demanded the following relief: "[a]ll I want is to be removed from 5 house away from this disobedent [sic] Lt. Wangler. 1 or 2 house !!! I don't feel safe or secure around Lt. Wangler and I feel the injury to my foot is getting worse because of me having to put a shoe on it." *Id.* at p. 76. Neither Defendant Brown nor Defendant Mitchell is named in this grievance. On June 28, 2022, the CAO deemed this grievance an emergency. *Id.* On July 6, 2022, the CAO concurred with the grievance officer's recommendation to deny the grievance. *Id.* at p. 74. On August 10, 2022, Mr. Luftus with

the ARB denied this grievance concluding that the facility appropriately addressed this issue and that the medical issues were previously addressed in grievances # 1379-05-22 and # 1522-06-22; Director Jeffreys concurred. *Id*. at p. 66.

Plaintiff filed two more emergency grievances: one on July 11, 2022, emergency grievance # 1891-07-22 and one on July 13, 2022, emergency grievance # 1937-07-22. The CAO deemed both grievances as emergencies. (Doc. 26-1, p. 80-82). Grievance # 1891-07-22 is for staff conduct and medical treatment and named: "Chief Administrative Officer, Doctor, Nurse P, Lt Wangler, Grievance Officer." *Id*. at p. 80. Grievance # 1937-07-22 is for medical treatment and named "Medical staff members." *Id*. at p. 82. Neither of these grievances specifically named Defendant Brown nor Defendant Mitchell. However, grievance # 1891-07-22 does name the CAO. These grievances were combined for review. *Id*. at p. 78. On July 21, 2022, the grievance officer replied in part: "[p]er HCUA: He was seen again on 7/12/22 for his heel pain. He was scheduled for 7/8/22, but went to yard. He has crutches and an ace wrap for his foot, until he gets his MRI. I verified his MRI is scheduled. It was ordered with contrast and without contrast and that is why it has taken so long. There is a shortage nationwide of contrast and we had to wait until the imaging company had the contrast and could get him in. He is scheduled to go in the next 14 days." *Id*. On July 22, 2022, the CAO concurred with the grievance officer's recommendation to deny the grievance. *Id*. On August 10, 2022, Mr. Luftus with the ARB denied this grievance concluding that the facility appropriately addressed this issue and

that the medical issues were previously addressed in grievances # 1379-05-22 and # 1522-06-22; Director Jeffreys concurred. *Id*. at p. 66.

Lastly, Plaintiff submitted emergency grievance # 2391-08-22 on August 29, 2022. Plaintiff complained about not receiving surgery for his torn Achilles. His grievance provides in part: "[w]hat's the use of me making these grievances emergency when Pinckneyville doesn't treat them like an emergency. . . . Pinckneyville Medical Staff is not treating my injury as its an emergency. . . . Pinckneyville Medical Staff doesn't care about my health and well being." *Id.* at p. 48-49. Plaintiff relief stated: "I need pain medication. I need to be in healthcare awaiting my surgery and I need to have my surgery (NOW !!!)." *Id.* at p. 48. This grievance does not specifically name either Defendant. The CAO deemed this grievance an emergency. *Id.* The grievance officer recommended denial of the grievance stating: "[p]er HCUA: He has a permit for crutches, low bunk, and an ace wrap. He has been instructed to not walk on his foot, on several occasions. . . . He had an MRI completed 8/1/22. He is scheduled to go see the ortho in October. . . . He has been seen by nursing, NP, PT and PA. He had his pain medication renewed and permits done on 9/13/22. He has a foot injury that should not require an emergency button. It is also better for him because he should not have to walk as much." *Id*. at p. 47. The CAO agreed with the grievance officer on September 20, 2022. *Id.* at p. 46. On October 14, 2022, Mr. Loftus with the ARB denied the grievance finding it was appropriately addressed and that "[p]er HCU, grievant has been seen several times for this issue. Only licensed medical

professionals can diagnose and treat medical conditions. Grievant has access to HCU for all medical." Rob Jeffreys or his signatory concurred with the decision on the same date. *Id.* at p. 45.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*,

286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

### DISCUSSION

Defendants Brown and Mitchell maintain that none of Plaintiff's fully exhausted grievances reference any action or inaction by them. Thus, Plaintiff failed to exhaust his administrative remedies against them.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned

finds Defendants have not met their burden and that Plaintiff did exhaust his claims as to them. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n.1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g.*, *Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

      Here, the undersigned finds that Plaintiff through the above grievances provided enough information to put the prison officials on notice of the nature of his claims against

Defendant Brown and Defendant Mitchell. These grievances provide enough detail to inform the prison officials that Defendant Brown and Defendant Mitchell were involved somehow in his ongoing medical care. For example, in some of the grievances, Plaintiff complains about the grievance officer. In another grievance, Plaintiff specifically complained about the administration office noting that the administration just signs off on everything. In yet another grievance, Plaintiff complains about the Pinckneyville medical staff. While Defendant Mitchell and Defendant Brown are not specifically named, this is sufficient to satisfy the purpose of exhaustion, which is to put the jail on notice of problems within the facility to allow the jail the opportunity to address the problem before a lawsuit is filed. Moreover, Defendants were part of the grievance process (Defendant Mitchell finding the grievances as emergencies and then denying the grievances and Defendant Brown as the administrator of the HCUA providing information regarding Plaintiff throughout the process). Thus, they may be liable for deliberate indifference as Plaintiff's requests fell on "deaf ears." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Further, Plaintiff, even though he did file many grievances, was not required to file successive grievances regarding the same issues if the conduct continues. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have not carried their burden regarding exhaustion, and that Plaintiff did exhaust his administrative remedies as to his claims against Defendant Brown and Defendant Mitchell.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 26).

**IT IS SO ORDERED.**

**DATED: June 4, 2024.**

Digitally signed by
Judge Sison
Date: 2024.06.04
12:06:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**